Sanford C. HILL, III, on behalf of himself and a class of persons similarly situated, Plaintiff,

v.

BELLSOUTH CORPORATION, et al., Defendants.

No. CIV.A. 1:02–CV–2440–JOF.

United States District Court, N.D. Georgia, Atlanta Division.

March 30, 2004.

Joseph H. Meltzer, Schiffrin & Barroway, Bala Cynwyd, PA, Corey Daniel Holzer, Michael Ira Fistel, Jr., Holzer Holzer & Cannon, Atlanta, GA, Christopher A. Seeger, David R. Buchanan, Diogenes P. Kekatos, Seeger Weiss, New York City, for Plaintiff.

Howard Douglas Hinson, Patrick Connors DiCarlo, Alston & Bird, Atlanta, GA, for Defendants.

Lynn Lincoln Sarko, Elizabeth A. Leland, Derek W. Loeser, Erin M. Riley, Keller Rohrback, Seattle, WA, Corey Daniel Holzer, Michael Ira Fistel, Jr., Holzer Holzer & Cannon, Atlanta, GA, Gary Gotto, Ron Kilgard, Laurie Ashton, Keller Rohrback, Phoenix, AZ, Randall K. Pulliam, S. Gene Cauley, J. Allen Carney, Steven A. Owings, Cauley, Geller, Bowman & Coates, Little Rock, AR, for Consolidated Plaintiffs.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Defendants' motion to dismiss [19–1] and Plaintiffs' motion for leave to file a surreply in opposition to the motion to dismiss [31–1].[1]

## I. Statement of the Case

### A. Procedural History

Plaintiff Sanford C. Hill, III, on behalf of himself and a class of persons similarly situated, filed a claim with this court for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA") on September 3, 2002 against Defendants BellSouth Corporation and its various officers and directors.[2] On March 7, 2003, similar claims brought by Plaintiffs John Russell and Scott R. Simpson were ordered consolidated into the master file now before the court. Plaintiffs filed a

---

1. The Local Rules do not contemplate that a party will file a surreply. *See* L.R. 7, N.D. Ga. Nevertheless, the court examined the materials submitted by Plaintiffs in their motion and finds that the contents thereof do not affect the court's decision. Therefore, Plaintiffs' motion for leave to file a surreply is DENIED AS MOOT [31–1].

2. In full, the Defendants are BellSouth Corporation, BellSouth Board of Directors, BellSouth Savings Plan Committee, BellSouth Board of Directors Finance/Strategic Planning Committee, F. Duane Ackerman, Reuben V. Anderson, James H. Blanchard, J. Hyatt Brown, Armando M. Codina, Ronald M. Dykes, Kathleen F. Feldstein, James P. Kelly,

consolidated complaint on April 21, 2003. Defendants filed the instant motion to dismiss on August 25, 2003.

## B. Facts

Defendant BellSouth ("the Company") is a communications company providing voice and data services in both the domestic and foreign market. Defendant's operations include domestic advertising and publishing, domestic communications, Latin American communications, and domestic wireless service. Plaintiffs are a class who participated in the Company's ERISA plan ("Plan"), as well as their beneficiaries, "for whose accounts the fiduciaries of the Plan made or maintained investments in Bell-South stock through the BellSouth Stock Fund between January 22, 2001 and the present (the Class Period)." Consolidated Complaint, at 11.

The Company is the Plan's sponsor. The terms of the Plan designate the Defendant Savings Plan Committee to serve as Plan administrator, and the Plan is administered through that committee. Defendant Board of Directors appoints, monitors, and removes members of the Savings Plan Committee. Defendant Board of Directors Finance/Strategic Planning Committee, among its other responsibilities, oversees qualified benefit plans. Defendants Dykes and Shannon, Chief Financial Officer and Executive Vice President, Principal Accounting Officer, and

Vice President–Finance, respectively, signed documents filed with the Securities and Exchange Commission. The Company and the Savings Plan Committee are named fiduciaries of the Plan.

The Plan offers full and part-time employees the opportunity to participate in the Plan after one year of employment. Participants may contribute a portion of their salaries to the Plan, and may direct their contribution to be invested in any of the Plan's investment options, including the BellSouth Stock Fund. The Stock Fund invests in shares of Company stock. Participant contributions are of two types: basic and supplemental. The Company matches participants' basic contributions, but does not match any supplemental contributions. Matching contributions are made in company stock to an Employee Stock Ownership Plan ("ESOP"). Initially, these matching contributions could not be transferred to other Plan funds, but effective March 15, 2002 the Plan was modified to allow participants to make such transfers and re-allocations.

As of January 2001, accounting errors led the Company to record doubtful consumer accounts as realized revenue in the domestic advertising and publishing division. The Company reported these inaccurate revenue statements both to the SEC and to the public through a series of SEC filings and press releases.[3] A January 22, 2001 press release contained inac-

---

Joseph M. Magliochetti, John G. Medlin, Jr., Leo F. Mullin, Eugene F. Murphy, W. Patrick Shannon, Robin B. Smith, William S. Stavropoulos, Richard D. Sibbernsen, Clinton A. Demetriou, Salem C. Shunnarah, John Does 1–30, and unknown fiduciary defendants 1–100.

**3.** This is a point of dispute between the parties. Plaintiffs contend that Defendants, acting as fiduciaries, communicated with Plan

participants through SEC filings and press releases as well as the summary plan description ("SPD"). Defendants contend that SEC reports were not incorporated into the summary plan description given to Plan participants. Instead, Defendants argue that the Company's prospectus incorporates both the SPD and SEC filings, but that this does not mean SEC filings are incorporated into the SPD. Further, Defendants assert that SEC filings are not subject to ERISA fiduciary re-

curate information about revenues, and the first quarter SEC 10–Q filing also included inaccurate revenue statements as well as implying the allowance for doubtful accounts was sufficient. The second and third quarter 10–Qs contained similar inaccuracies. A February 28, 2002 10–K reported favorable revenue trends, based at least in part on the inaccurate inclusion of doubtful accounts, and again implied the allowance for doubtful accounts was sufficient. However, on April 19, 2002, the Company issued a press release revealing the overstatement of revenues due to crediting of the unbilled accounts receivable, which resulted in overstatement of $163 million in revenue or about $.09 per share. This release was followed on May 3, 2002 with SEC Form 10–Q, which reiterated these facts and claimed the error was caused by improper posting of customer adjustments to the Company's general ledger. The Company further stated that no single reporting period was materially misstated, nor were operating trends or regulatory requirements affected.

The Company is invested in Latin American communications markets to a comparatively greater degree than its competitors, with this division representing 10–12% of the Company's yearly operating revenues. The value of the Company's assets in this geographic area, known for its political and economic unrest, has decreased in the relevant period. A February 21, 2002 press release announced negatively revised financial guidance for 2002, and attributed this to currency devaluations and economic conditions in Argentina and Venezuela. The Company's SEC filings noted the inherent dangers of invest-

ment in this area, and posited a strong U.S. dollar as the reason for hampered growth in the value of the investment. However, the Company stated it viewed Latin America as an area of future growth.

The compensation of Company officers was in part tied to Company performance. Defendant officers could receive annual incentive awards, which were based upon the Company's reported performance. Defendants Ackerman and Dykes sold Company shares during the class period for net profits. The Company paid its shareholders dividends at consistent levels in this class period, $.76 per share in 2001 and $.79 in 2002.

### C. Contentions

Plaintiffs allege that the inclusion of the Stock Fund as a Plan option, coupled with communications from Defendants discussing the benefits of Company stock ownership but omitting any discussion of risks, led participants to invest their contributions in Company stock. Plaintiffs allege that the Company's reliance on improper accounting practices and promotion of its high-risk Latin American investments led stock values to trade at artificially high levels. The failure of Defendants properly to consider the accounting irregularities and riskiness of the Latin American initiative before investing in Company stock is alleged to be the central flaw in Defendants' failure prudently to manage the Plan's assets. Further, Plaintiffs allege that the incentive awards, tied as they were to the value of Company stock, created a conflict of interest in Defendant officers of the Company, as they would be unlikely to reveal to Plan participants in-

quirements, as they are made to investors generally and not part of a Plan benefits dis-

cussion.

formation that might discourage their purchase of Company stock in order to bolster stock value. Plaintiffs contend that Defendants' breach of their fiduciary duties consisted in their failure prudently to manage Plan assets, to provide complete and accurate information to Plan participants and beneficiaries, and to avoid conflicts of interest. Further, Plaintiffs allege that the Company, Board of Directors, and Finance Committee's failure to monitor the Savings Plan Committee's investment in company stock for its prudence, as well as failing to disclose to that committee accurate information about Company finances and accounting practices, was also a breach of fiduciary duty.

■ Defendants contend that its investment in Company stock was prudent, especially in light of a presumption that investment in employer securities is presumptively prudent for Individual Plan Accounts. Defendants allege that the Latin American losses and accounting errors did not render Company stock an imprudent investment. Further, Defendants argue that its press releases and SEC reports were not fiduciary in nature and cannot form the basis of an argument that the Company misled Plan participants. Additionally, Defendants assert that they have no affirmative duty to disclose information not specified by ERISA. Indeed, Defendants suggest that revelation of "inside information" to Plaintiffs might be a violation of Rule 10b–5 which prevents insider trading. Defendants contend Plaintiffs cannot charge them with liability for lack of diversification, as investments in company stock are exempt by law from the fiduciary duty to diversify. Charges of conflict of interest are also dismissed by Defendants, who allege existence of financial interest in performance of Company stock is insufficient to state a claim for breach of loyalty. Ultimately, Defendants contend, Plaintiffs cannot show damages proximately caused by Defendants' failure to disclose because assuming the information was wrongly withheld, upon its release, the market would have immediately adjusted and Plaintiffs could not have sold stock at the pre-disclosure price. Defendants further claim that the Director and Officer Defendants did not act in a fiduciary capacity, and that Plaintiffs did not plead with the specificity required by Federal Rule of Civil Procedure 9(b).[4]

## II. Discussion

### A. Duty to Manage Prudently

■ ERISA imposes high standards of fiduciary responsibility upon those persons entrusted with administration of an ERISA plan. *Herman v. NationsBank Trust Co. (Georgia)*, 126 F.3d 1354, 1361 (11th Cir.1997). The duties incumbent upon an ERISA fiduciary are set forth by the statute in § 404. 29 U.S.C. § 1104. Among these duties is the duty of prudence, the "prudent man" standard, which requires the fiduciary to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *Id.*

4. The court rejects Defendants' contention that the claims for breach of fiduciary duty require heightened pleading under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs have not alleged that Defendants' breach of their fiduciary duties consisted in fraud, and thus heightened pleading is not required. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir.1995); *Fink v. National Sav. & Trust Co.*, 772 F.2d 951, 959 (C.A.D.C.1985); *see Thornton v. Evans*, 692 F.2d 1064, 1082–83 (7th Cir.1982).

at § 404(a)(1)(B). While normally fiduciaries are to follow the requirements set forth in governing plan documents, fiduciaries must exercise their judgment and refuse to do so if their analysis leads them to believe that the plan-directed investment would be imprudent and inconsistent with ERISA. *Herman,* 126 F.3d at 1369; *In re Enron Corp.,* 284 F.Supp.2d 511, 549 (S.D.Tex.2003). While the Court of Appeals for the Eleventh Circuit has not yet addressed this issue, other circuits have created a presumption of prudence for fiduciaries of ESOPs, holding that in this context investing in the employer's stock receives the presumption that such investment was a prudent decision. *Kuper v. Iovenko,* 66 F.3d 1447, 1459 (6th Cir.1995) (citing *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir.1995)). However, a plaintiff can overcome this presumption by showing that the fiduciary abused his discretion in investing in employer stock. *Id.* To do so, a plaintiff must demonstrate that the fiduciary "could not have reasonably believed that the plan's drafters would have intended under the circumstances that [the fiduciary] continue to comply with the ESOP's direction" to invest in employer stock. *Id.*

A motion to dismiss should be denied unless it is beyond doubt that a plaintiff could prove no set of facts that would entitle him to relief. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1539 (11th Cir.1991). Well-pleaded allegations in a plaintiff's complaint must be taken as true for the purposes of a motion to dismiss. *Id.* Further, where, as here, a plaintiff refers to documents in the complaint that are central to the claim, the court may consider those documents for the purposes of a motion to dismiss under Rule 12(b)(6). *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1368 (11th Cir.1997). Plaintiffs deny Defendants' contention that they are entitled to a presumption of prudence, a presumption not yet recognized by this circuit, arguing that neither the Stock Fund nor the ESOP was a true ESOP as defined by ERISA. Nevertheless, Plaintiffs assert that Defendants knew or should have known that the Company's stock value was artificially inflated by the addition of unbilled accounts receivable revenue. Further, Plaintiffs assert that Defendants either knew or should have known that the Latin American business division, representing at least 10% of Company business, was an unusually high-risk investment. Press releases and SEC reports show that during the class period Defendants revealed accounting errors that led the Company to overstate profits by $163 million. Additionally, Defendants' press releases refer to the economic and political instability in Latin America and indicate the investment involved increased risk. Further, Defendants do not deny that their investment in Latin America exceeded the levels of investment of other "Baby Bell" communications companies. Plaintiffs allege that these facts show that Defendants' continued investment in Company stock was imprudent, or alternatively, is sufficient to overcome a presumption of prudence.

The court, as it must in a motion to dismiss under Rule 12(b)(6), accepts as true all of Plaintiffs' allegations. Defendants assert, and Plaintiffs have not disputed, that Company stock did not lose value as a result of the disclosure of accounting errors. Accounting losses of $163 million represent only a small fraction of the total profits of the Company.[5] Nevertheless, the court finds that Plaintiffs

5. Net income was $2.5 billion in 2001 and $1.4 billion in 2002.

may be able to set forth a set of facts in which a reasonably prudent person would have found this unexpected nature of the loss to be sufficient to signal that Company stock was no longer a prudent investment. Given the economic climate in which companies now operate after the Enron and WorldCom financial scandals, the court recognizes that the markets are more unwilling than ever to tolerate corporate misstatement of earnings. Accordingly, the court can conceive of evidence which Plaintiffs might advance illustrating that a prudent investor, seeing discrepancies in Company's reported profits, would hesitate to invest trust funds in Company stock. Further, while all parties acknowledge the Latin American investments are inherently risky, and that those investments only form 10–12% of Company assets, the Company did issue public statements regarding the riskiness of the Latin American investments. Given the Company's longstanding investment in the Latin American region, coupled with the fact that most respected large corporations are now multinational, the court has reservations about Plaintiffs' ability to muster sufficient facts in support of its claim that the Latin American investments rendered Company stock an imprudent investment. Despite these doubts, however, the court cannot find that Plaintiffs would not be able to prove a set of facts in support of this claim. Therefore, the court must DENY Defendants' motion to dismiss this claim.

## B. Failure to Disclose

■ ERISA enumerates several situations in which a plan administrator or fiduciary is required to disclose information to plan participants. 29 U.S.C. §§ 1021–1031. For example, plan administrators or fiduciaries must provide participants with updated summary plan descriptions, annual reports, and send statements to participants detailing total benefits accrued. *Id.* at §§ 1024(b)(4), 1025(a)(1). Plaintiffs, however, do not appear to argue that the duty to disclose arises from any particular ERISA provision, but rather from a core fiduciary responsibility to act in the interests of beneficiaries by furnishing complete and correct information, especially when Plan assets are at risk.

■ A fundamental premise of ERISA is that employer-fiduciaries wear "two hats," acting both as a fiduciary to an ERISA plan and as an employer with an obligation to the company. *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986). Under this doctrine, employers are not prohibited from acting in accordance with their interests as employers, even when adverse to the interest of the beneficiaries, so long as they are not acting as an ERISA fiduciary. *Id.* Therefore, disclosure duties under ERISA extend only to information about the ERISA plan and not to any information in the possession of the ERISA fiduciary in his capacity as employer.

■ However, a growing number of circuits have found that the distinction between the employer and fiduciary "hats" begins to blur when company circumstances are such that business details directly impact the administration of the ERISA plan. In *In re Enron,* the Southern District of Texas addressed an alleged breach of the fiduciary duty to disclose business information to plan participants and noted that "[t]he fiduciary's duty to disclose is an area of developing and controversial law." 284 F.Supp.2d at 555. Courts are now more willing to find an affirmative fiduciary duty to disclose information beyond the traditional duties to

disclose specified in the statute or the common law obligation to respond to specific requests from plan participants or beneficiaries. *Id.* However, this new affirmative duty to disclose has only been imposed in "special circumstances with a potentially 'extreme impact' on a plan as a whole, where plan participants generally could be materially and negatively affected." *Id.* at 559. In addition, an affirmative duty to disclose has also been imposed where a fiduciary presents materially misleading information to plan beneficiaries while acting as a fiduciary, requiring the fiduciary to correct the error and speak truthfully to the beneficiaries. *See Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In noting the changes in fiduciary obligations, however, the court must emphasize that the mere fact that an ERISA plan consists, at least in part, in employer stock does not mean that the ERISA fiduciary duty to disclose plan-related information to beneficiaries is transformed into a general duty to disclose the financial details of the business: some sort of "special circumstance" will be required to trigger these heightened obligations.

The court again accepts as true all of Plaintiffs' allegations of fact. Plaintiffs rely upon Defendants' admissions in their press releases to assert that the Latin American venture was risky, losing money, and an area in which no other peer company had invested to the same extent. Further, Plaintiffs use the evidence of revenues inflated by accounting errors to show that stock price was inflated. Plaintiffs further assert, and Defendants do not dispute, that 40% of the Plan's assets are invested in Company stock. Plaintiffs have alleged that Defendants encouraged employee investment in Company stock while knowing that such investment was imprudent. As discussed above, Plaintiffs'

cause of action on the duty to prudently manage the ERISA plan remains viable. As Plaintiffs have alleged that Defendants put forth a misrepresentation regarding the suitability of Company stock for investment that required disclosure, the court cannot find that Plaintiffs will not be able to prove a set of facts in support of its claim that Defendants breached their duty to disclose. For these reasons, the court must DENY Defendants' motion to dismiss at this time.

## C. Duty to Avoid Conflicts of Interest

■■ At the common law, the actions of trustees cannot be motivated by any purpose other than the accomplishment of the purposes of the trust. *Brown v. Blue Cross and Blue Shield of Alabama,* 898 F.2d 1556, 1566 (11th Cir.1990). The duty of loyalty set forth in ERISA § 404 is a statutory recognition of this common law duty. *Id.* Thus, fiduciaries of an ERISA plan are to avoid any conflicts of interest with their duty to act "solely in the interest of the participants and the beneficiaries" of an ERISA plan. *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 251–52, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); 29 U.S.C. § 1104(a)(1)(B). The issue, therefore, is whether a fiduciary acted in a manner that negatively affected plan participants while acting as a fiduciary. *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 768 (S.D.N.Y. 2003) (citing *Pegram v. Herdrich,* 530 U.S. 211, 225, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)).

The gravamen of Plaintiffs' complaint is that because of a conflict of interest, Defendants Company, Savings Plan Committee, chair, and members; Board of Directors, chair, and members; Finance Committee members; Defendant Dykes, Company Chief Financial Officer; and Defendant Shannon, Company executive vice president, principal accounting officer, and vice president for finance, should have en-

gaged independent fiduciaries or advisors to independently evaluate investment in Company stock, as well as report the facts that made Company stock allegedly unsuitable to the Department of Labor. In support of its claim, Plaintiffs have offered evidence that those Defendants who are officers and/or directors of the Company have an incentive to boost the value of Company stock due to an incentive package that ties salary benefits to Company performance. Further, Plaintiffs have shown that the accounting errors, while unreported, increased the total revenues realized by the Company by $163 million. Plaintiffs have also offered evidence that at least two Defendants, Ackerman, chair of the Board of Directors, and Dykes, sold Company stock during the class period for a net profit. The court finds that Plaintiffs have demonstrated that they can produce a set of facts in support of their conflict of interest claim. At the very least, Plaintiffs' facts, accepted here as true, show that fiduciaries had insider knowledge, knowledge which affected the price of stock that they held and in some cases sold, and acted in a way that benefitted them personally, yet did not protect the trust. Thus, the court DENIES Defendants' motion to dismiss.

### D. Failure to Monitor

■ Plaintiffs allege that Defendants BellSouth, Board of Directors, and Finance/Strategic Planning Committee breached their duty to monitor the Savings Plan Committee's investment in Company stock for its prudence, as well as failing to disclose to that Committee information that would have led it to discover the imprudence of investing in Company stock. Plaintiffs further allege that Defendant BellSouth breached its duty by failing to monitor the Board of Directors in their monitoring of the Savings Plan Committee, and in monitoring the Finance/Strategic Planning Committee as it monitored the

Savings Plan Committee. Throughout Plaintiffs' claim runs the assumption that the decision to invest in Company stock was imprudent. The court has not held that Plaintiffs cannot state a claim that Defendants failed in their duty of prudence. Therefore, as Plaintiffs allege the failure to monitor consisted in allowing imprudent investment in Company stock, this court finds that Plaintiffs could state a claim for which relief can be granted. Thus, the court DENIES Defendants' motion to dismiss.

The court has DENIED Defendants' motion to dismiss on all four counts of Plaintiffs' consolidated complaint.

### III. Conclusion

The court DENIES Defendants' motion to dismiss [19–1] and DENIES AS MOOT Plaintiffs' motion for leave to file a surreply [31–1].